PEOPLE *v.* HEARNE.

*(Supreme Court, General Term, First Department.* November 18, 1892.)

**1. EMBEZZLEMENT—INDICTMENT—DESCRIPTION OF MONEY.**
    In an indictment for embezzlement, it is sufficient to state the sum and fix the value of the money taken; and an allegation that the money taken was lawful money of the United States is immaterial, and, if made, need not be proved.

**2. SAME—EVIDENCE—GRAND LARCENY.**
    Complainant, an immigrant recently landed, in order to secure employment, agreed with defendant to purchase some stock in the company of which defendant was secretary and treasurer. He paid a small amount down, and delivered to defendant a draft for £140 on a foreign bank, which defendant was to have cashed through his bankers, and it was agreed that $45 thereof should be applied to the balance due on the stock. The draft was indorsed to defendant, and left with his bankers, who, when they realized the money on the draft, placed it to defendant's account, by whom, by successive checks, it was all withdrawn. The prosecution offered in evidence a receipt, by the cashier of the bank, of a draft from defendant for £140 for collection for account of C., the complainant; but defendant produced a witness who swore that C.'s name was written, through a clerical error, in place of defendant's. Complainant testified that he never authorized the bank to place the amount to defendant's credit, or defendant to use it in his business. Defendant testified that complainant did authorize such use of the money, and was corroborated by the banker and the cashier. *Held,* that a verdict of guilty of grand larceny would not be disturbed.

Appeal from court of general sessions, New York county.

Charles C. Hearne was convicted of grand larceny, and appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and LAWRENCE, JJ.

*John J. Crawford,* for appellant. *De Lancey Nicoll, (Henry B. B. Stapler,* of counsel,) for the People.

O'BRIEN, J. The indictment contains two counts. The first count charges that the defendant with force and arms took and carried away certain

·money, the property of one Patrick J. Coen. This count is in the usual form for larceny of money at common law. The second count charges the statutory larceny or embezzlement. The prosecution elected to go to the jury on the second count, which charged the defendant, as the agent of the said Patrick J. Coen, with the felonious appropriation of "the sum of seven hundred dollars in lawful money of the United States of America, and of the value of seven hundred dollars."

The grounds urged for a reversal of the judgment are—*First*, that there is a fatal variance between the allegations of the second count of the indictment and the evidence; *second*, that the verdict was against the weight of evidence; and, *third*, that, as the evidence showed that the banker to whom the complainant's draft was delivered had no authority to pay out the money on the prisoner's checks, there was no larceny by defendant. In disposing of these grounds a brief reference to the facts becomes necessary:

The complainant, a young Irishman, then recently landed, had applied to the defendant for employment. He was informed by the defendant that he, the complainant, as a condition of being employed, must purchase some stock in the Dorcas Publishing Company, of which the defendant was secretary and treasurer. This the complainant agreed to do. He paid the defendant $75 on account of such stock, and delivered to defendant a draft for £140 on a bank in Ireland, to have cashed through defendant's bankers, Hotchkiss & Co.; and it was agreed that out of the proceeds of such draft $45 should be applied to the balance due on the stock purchased by the complainant. The draft was indorsed over to the defendant by the complainant, and together they went down with it to the bankers. The draft was left with Hotchkiss & Co., who in a few days thereafter realized the money thereon. This amount was placed to Hearne's account, and against such credit Hearne drew checks until all was withdrawn.

The prosecution offered in evidence a receipt made out by one Leeds, the cashier of Hotchkiss & Co., acknowledging to have "received from C. C. Hearne draft, £140, on 1st Nl. Bk. of Tuam, Ireland, for collection for account of P. J. Coen." A witness called by defendant testified that the words "P. J. Coen" in the receipt were a clerical error for "C. C. Hearne." The complainant also testified that he never authorized the amount to be placed to defendant's credit, and that he never authorized defendant to use it in his business. The defendant, on the other hand, testified that complainant did authorize him to use the money in his business, and the testimony of Hotchkiss, the banker, and Leeds, the cashier, was to the same effect. This bare outline of the facts by no means represents the full force of the testimony presented by the prosecution; for when these facts are colored and characterized by the means employed to obtain the money and the draft from a young and defenseless immigrant, no doubt of the deliberate scheme to defraud is present; but, for the purposes of disposing of the questions raised, the brief summary given is sufficient. The fatal variance between the indictment and proof claimed is in that the money was described to be lawful money of the United States; and the proof not going to the extent of showing that it was lawful money of the United States, although no question arose but that it was money and of the value as charged in the indictment, that therefore the prisoner is entitled to a reversal of the judgment, and should be allowed to go free. It is to the credit of our present system of procedure in the criminal law that the nice distinctions existing at common law, which on any such technical plea would have enabled a scoundrel such as the defendant has been shown to be to escape the just penalty of his crime, are swept away. All that was required in the indictment was to state the sum and fix the value of the money taken, and an allegation as to whether it was lawful money of the United States or other money was entirely immaterial and unnecessary. It is insisted, however, that admitting it to have beeen un-

necessary, having been alleged, it was essential for the prosecution to prove it in the form as alleged, and that the failure to so prove it is fatal to the conviction. In support of this contention, we are referred to a long line of authorities where the fine distinctions that existed at common law, or under statutes different from our own, were under consideration. As we have stated, we are glad that no such plea can prevail. As has been well pointed out in the case of *People* v. *Reavey*, 4 N. Y. Crim. R. 14, the sufficiency of this indictment is not to be determined by such authorities, "considering and applying the technical principles of the common law, for they have been in a great measure superseded by the enactment of the Code of Criminal Procedure." This is an instructive case, and a direct authority against the position for which the appellant, upon the ground stated, contends.

His second point, that the verdict is against the weight of evidence, is equally untenable. It was entirely competent for the jury, taking all the facts and circumstances surrounding the obtaining of the draft and money from the complainant, to accept his version, supported as it was by the written agreement, in preference to the improbable story attempted to be palmed off on the jury by the prisoner, though supported by other witnesses. It may well be that the unenviable position occupied by these bankers may have rendered them liable to respond to the complainant for the amount of the draft. But this in no way detracts from the force and effect of the facts convicting the defendant of an intention to embezzle an immigrant's money, in which, through the carelessness or connivance of the bankers, he was successful. We do not deem it necessary to further discuss the arguments upon the prisoner's behalf, because we regard the contentions as entirely devoid of merit, and the conviction itself as manifestly just. We are of opinion, therefore, that the judgment of conviction should be affirmed. All concur.